UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GREGORY D. HAWKINS,<br><br>Petitioner,<br><br>vs.<br><br>RICH GANSHIMER, Warden<br><br>Respondent. | : | CASE NO. 5:04-cv-00802<br><br>ORDER & OPINION<br>[Resolving Doc. Nos. 1, 28] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 30, 2004, Gregory D. Hawkins filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. No. 1]. With his petition, Hawkins challenges his Ohio conviction for complicity to commit aggravated burglary with an attached firearm specification. After the conviction, Ohio sentenced the Petitioner to an eleven-year sentence. Hawkins currently serves that sentence at the Lake Erie Correctional Institution. Respondent Warden Rich Ganshimer opposes Hawkin's petition.

On July 13, 2005, Magistrate Judge James S. Gallas issued a report and recommendation, finding that the Petitioner was in custody pursuant to a state court judgment involving an unreasonable application of state law. [Doc. No. 28]. Nonetheless, Magistrate Judge Gallas recommended that this Court deny Hawkin's petition for habeas relief on the basis that the state court error was harmless. The Petitioner filed timely objections to the Magistrate's report and recommendation. For the reasons stated below, the Court **DENIES** the Petitioner's motion for

habeas relief.

## I. BACKGROUND

*A. Factual Background*

The instant case arises out of Petitioner Hawkins' involvement in a burglary of the residence of Ronald Henderson and Latasha Franklin that took place on October 30, 2000. The Petitioner allegedly knew the victims indirectly through the Petitioner's girlfriend, Jellaketa Jackson. During the year prior to the burglary, Jackson babysat for Franklin. Petitioner Hawkins visited Henderson and Franklin's residence with Jackson, and may have observed money that Franklin kept in the house.

On the early morning of October 30, 2000, Latasha Franklin awoke at her residence and went to her car to retrieve a cell phone. When she returned, she observed two individuals whom she did not recognize standing on the sidewalk in front of her house. The individuals, later identified as David Clark and Robin Stewart, asked if Henderson was home. Franklin indicated that Henderson was asleep. Clark then pulled out a gun and told Franklin to open the door. When Franklin opened the door she triggered the house's alarm system, waking Henderson. Upon hearing the alarm, Henderson retrieved his gun and hid it under the bedcovers in his bedroom. Stewart and Clark, both armed with guns, forced Franklin back into the bedroom at gunpoint and then bound Franklin and Henderson with duct tape.

While still in the bedroom, Clark attempted to cock his gun, but the gun jammed. Henderson later testified that he recognized the gun at that time as a "Lorcin" that he had seen in the possession of Jellaketa Jackson and the Petitioner. Henderson remembered telling Jackson that the gun was "a piece of junk."

After binding Franklin and Henderson, Stewart and Clark split up and searched the house for money, jewelry, and other items of value. At some point during the burglary, Henderson retrieved his weapon and shot Stewart, prompting Clark and Stewart to flee the scene. As Clark and Stewart left, Henderson exited his house through a second floor bedroom-window. Henderson testified at Hawkins' trial that he observed Stewart and Clark run to a blue van parked up the street. He also testified that he saw Petitioner Hawkins waiting outside of the van. Henderson recognized the van as belonging to Jellaketa Jackson.

Meanwhile, neighbors called the police and officers responded to the incident shortly thereafter. After the responding officers spoke with Henderson and Franklin, the police department dispatched two officers to Jackson's apartment. When they arrived, the officers observed the Petitioner sitting in the driver's seat of Jackson's van outside of Jackson's apartment. Jackson allowed the officers to search her apartment. She also admitted that she owned the van, and allegedly became uncooperative when the officers asked to search the van. Both the Petitioner and Jackson told the police officers that no one was inside the van, and the Petitioner gave three inconsistent statements as to why he was in the car: to take his children to school, to go to work, and to go to the store to get cigarettes.

Despite the Petitioner's assurance that no one else was in the van, the police believed that people were hiding in the back of the van because the van was sitting low in the back and the windows were foggy from the inside. Accordingly, the officers searched the van and found Stewart and Clark in the back. They took Stewart to the hospital and took Clark, Jackson, and Petitioner into custody. Once at the hospital, Stewart confessed to the burglary and stated that the Petitioner drove her and Clark to Henderson and Franklin's residence.

*B. Procedural Background*

1. Indictment and Conviction

On November 2, 2000, the Portage County Grand Jury issued an indictment against Hawkins, charging him with one count of complicity to commit aggravated burglary, in violation of Ohio Rev. Code §§ 2923.03 (A) (1) (2) (3) and 2911.11 (A) (2) (B), with a firearm specification, in violation of Ohio Rev. Code §§ 2929.14 (D) and 2941.145. The indictment also charged the Petitioner with two counts of complicity to kidnaping, in violation of Ohio Rev. Code §§ 2923.03 (A) (1) (2) (3) and 2905.01 (A) (2), and one count of obstruction of justice, in violation of Ohio Rev. Code § 2921.32 ("Count Four").

Hawkins pleaded not guilty to all charges and the Portage County Court of Common Pleas set the case for a jury trial. Prior to trial, the State learned that Robin Stewart would be unavailable to testify at the trial as she intended to invoke her Fifth Amendment right against self-incrimination. Accordingly, the State indicated that it would seek to introduce at trial the taped statement that Robin Stewart gave to the police officers at the hospital. On January 5, 2001, Petitioner Hawkins moved to exclude or suppress the statement. On January 18, 2001, the court held an evidentiary hearing, and shortly thereafter entered an order overruling the Petitioner's motion.

On February 6, 2001, the jury trial commenced, and on February 13, 2001, the Jury returned a verdict, finding the Petitioner guilty of complicity to commit aggravated burglary with a firearm specification.[1/] On April 16, 2001, the court sentenced Hawkins to a term of eight years for complicity to commit aggravated burglary to run consecutively with a term of imprisonment of three

---

[1/] At the close of evidence, the court dismissed count four of the indictment for failure of the indictment to charge an offence. Count four charged the Petitioner with obstruction of justice. As to the remaining two counts of complicity to kidnaping, the jury was ultimately unable to reach a verdict.

years for the firearm specification.

2. Direct Appeal

On May 14, 2001, Hawkins filed a timely notice of appeal of his conviction. With this appeal, Hawkins raised the following assignments of error:

a. The trial court committed prejudicial and reversible error by allowing inadmissible hearsay evidence to be used at trial in violation of Defendant-Appellant's right to confront witnesses against him as guaranteed by the Sixth Amendment to the Constitution of the United States and by Article I, Section 10 of the Constitution of the State of Ohio.

b. The trial court committed prejudicial and reversible error by restricting cross-examination of two material state's witnesses in violation of Defendant-Appellant's right to effective assistance of counsel and due process of law as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by Article I, Section 10 of the Constitution of the State of Ohio.

c. The trial court committed prejudicial and reversible error by overruling Defendant-Appellant's Motion to Dismiss the indictments against him in the captioned cause based upon the denial of his right to speedy trial as guaranteed by the Constitution of the United States, the Constitution of the State of Ohio and by Section 2945.71(D) of the Ohio Revised Code.

d. The verdict of the jury in case sub judice is against the manifest weight of the evidence and is contrary to law.

On January 2, 2003, the Ohio Court of Appeals for the Eleventh District in Portage County issued a decision affirming the judgment of the trial court. With this decision, the appellate court made several findings that are pertinent to the current petition. With regard to the first assignment of error, the Ohio Court of Appeals found that the tape recorded statement fell within the hearsay exception for a statement against interest. The court also found that the statement did not violate Hawkins right to confront witnesses against him since the declarant was unavailable to testify and the statement bore adequate "indicia of reliability." The court overruled Hawkins' second

assignment of error regarding his right to effective cross-examination as to the first witness, the police officer who took Stewart's statement, because defense counsel was still able to extensively cross-examine the witness even though the objections were sustained.

Hawkins then filed an appeal in the Ohio Supreme Court, raising the following propositions of law:

> a. Statements against penal interest of a separately indicted co-defendant, inculpatory of another, must contain adequate indicia of reliability of sufficient guarantee of trustworthiness to allow admission of such statements into evidence at trial without the benefit of cross-examination and adversarial testing.
>
> b. Restriction of a defendant in the cross-examination of witnesses on matters relevant to the State's burden of overcoming presumptions of unreliability of an Evid. R. 804(B)(3) statement of an accomplice violates an accused's rights under the Confrontation Clause of the state and federal constitutions.

On May 7, 2003, the Supreme Court of Ohio denied Hawkins leave to appeal on the basis that the Petitioner's appeal did not involve any substantial constitutional question.

*C. Federal Habeas Corpus Action*

On April 30, 2004, Hawkins filed the instant petition for writ of habeas corpus. The petition contains the following grounds for relief:

> Ground One: The trial court committed prejudicial error by allowing inadmissible hearsay evidence to be used at trial in violation of Petitioner's right to confrontation of witnesses, a fair trial and due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.
>
> Ground Two: The trial court committed prejudicial error by restricting cross-examination of a material witness in violation of petitioner's right to effective assistance of counsel, confrontation of witnesses and due process of law as guaranteed by the Fifth,

Sixth and Fourteenth Amendments to the Constitution of the United States.

On July 13, 2005, Magistrate Judge Gallas issued a report and recommendation addressing both grounds for relief. Regarding the first ground, the Magistrate determined that both the state appellate and trial courts incorrectly applied the rules found in *Lilly v. Virginia*, 527 U.S. 116 (1999), and *Williamson v. U.S.*, 512 U.S. 594 (1994), and that the appellate court's application of this precedent was unreasonable. Specifically, the Magistrate determined that the state appellate court incorrectly applied the constitutional standard for "statement against interest." Furthermore, the state trial court incorrectly permitted Robin Stewart's statement in its entirety. The Magistrate determined that the more appropriate application of Evidence Rule 804(b)(3) would have been to allow only the parts of the statement that were self-inculpatory while excluding the non-self-inculpatory (i.e., the statements implicating Hawkins). Although the Magistrate determined that Hawkins' first ground for relief was well founded, he ultimately determined that the state courts' errors were harmless.

As to the second ground for relief, Magistrate Gallas determined that Hawkins' right to cross-examine his witnesses was not violated, that "any limitation on cross-examination . . . was harmless error at worst." ECF Dkt. # 28 at 18.

Hawkins raises the following objections to the Magistrate Judge's report and recommendation: First, Hawkins objects to the Magistrate's scope of review for the harmless error finding. Next, Hawkins argues that the Magistrate's analysis is not supported by the facts of the case nor by the laws regarding circumstantial evidence. Finally, Hawkins objects to the finding that admitting Robing Stewart's statement in its entirety was a harmless error. The court reviews the

Magistrate Judge's decision *de novo*.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs the standards of review for state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller*, 269 F.3d at 614 (internal quotations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). Meanwhile, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 1523. The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

A violation of state law is not cognizable in federal habeas corpus unless such error amounts

to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *Floyd v. Alexander*, 148 F.3d 615, 619, (6th Cir.), *cert. denied*, 525 U.S. 1025 (1998). It is the obligation of the Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the Petitioner shows by clear and convincing evidence that the findings of fact are erroneous. *See* 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

*A. First Ground for Relief – The Admission of Stewart's Tape Recorded Confession*

1. Admissibility of the Confession

In Hawkins' first ground for relief, he contends that the trial court's admission of Stewart's tape recorded confession, which was inculpatory of both Stewart and the Petitioner, violated the Fifth, Sixth, and Fourteenth Amendments. Hawkins argues that the trial court misapplied clearly established federal law because Stewart's statements contained neither an adequate indicia of reliability nor particularized guarantees of trustworthiness.

The Confrontation Clause of the Sixth Amendment, which applies to the States through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Harrington v. California*, 395 U.S. 250, 252 (1969). Confrontation Clause violations fit into two general categories: those involving the admissibility of out-of-court statements and those involving restrictions on the scope of cross-examination. *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988). The Supreme Court has previously held that a non-testifying witness's statements that also implicate the

defendant are presumptively unreliable. *Douglas v. Alabama*, 380 U.S. 415, 419-20 (1965); *see also Lilly v. Virginia*, 527 U.S. 116, 139 (1999) (holding that self-inculpatory statements are "suspect insofar as they inculpate other persons"); *Calvert v. Wilson*, 288 F3d 823, 828 (6th Cir. 2002). To overcome this presumption, the government must demonstrate that the out-of-court statement bears an "adequate indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).[2/] "Adequate indicia of reliability" is shown if the evidence falls within a "firmly rooted hearsay exception" or if the evidence has "particularized guarantees of trustworthiness." *Id.*

In the instant case, the state appellate court found that although Stewart's statement did not fall within a firmly rooted hearsay exception, it nonetheless "satisfied the indicia of reliability prong." *State v. Hawkins*, 2002 WL 31895118 ¶36. The court reasoned that Stewart's statement met the indicia of reliability prong since Stewart "did not attempt to completely exonerate herself and shift blame to appellant," she "was not given a promise or any consideration in exchange for her statement," and she "gave her statement to [the officers] after she was fully advised of her rights." *Id.* This reasoning, however, is an "unreasonable application" of federal law.

First, the Supreme Court has stated that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Williamson v. United States*, 512 U.S. 594, 599 (1994). Therefore, the self-inculpatory nature of Stewart's statement does not adequately guarantee the trustworthiness of her statements against Hawkins.

Second, although Stewart received no promises or consideration in exchange for her

[2/] Though the Supreme Court abrogated *Roberts* in *Crawford v. Washington,* 541U.S. 36 (2004), this Court remains bound by *Roberts* as it was the clearly established federal law at the time of Hawkins' trial. *See Dorchy v. Jones*, 398 F.3d 783 (6th Cir.2005) (finding *Crawford*'s holding not retroactive).

statement, the Supreme Court has stated that it is unnecessary for the police to make any promises of leniency for a "suspect to surmise that speaking up, and particularly placing blame on his cohort may inure to his advantage." *Lilly*, 527 U.S. at 139. Therefore, the state court incorrectly reasoned that the absence of promise or consideration provided the "adequate indicia of reliability" needed to admit the statement.

Finally, "a suspect's consciousness of his *Miranda* rights has little, if any, bearing on the likelihood of truthfulness of his statements. When a suspect is in custody for his obvious involvement in serious crimes, his knowledge that anything he says may be used against him militates against depending on his veracity." *Lilly*, 527 U.S. at 138. Here, the state court's reliance on Stewart's knowledge of her *Miranda* rights is misplaced and is an unreasonable application of federal law. Accordingly, the Court finds that the state court misapplied Supreme Court precedent when determining the admissibility of Stewart's statement.

2. Harmless Error Analysis

Given the preceding analysis, the Court next considers whether admitting Stewart's statement was harmless error. See *Olden v. Kentucky*, 488 U.S. 227, 232 (1988); *Brown v. United States*, 411 U.S. 223, 231-32 (1973). The Magistrate Judge recommends that though the admission of Stewart's testimony was contrary to constitutional law, the admission was nonetheless harmless. The Petitioner objects to the Magistrate's finding for several reasons. First, the Petitioner claims that the Magistrate Judge did not engage in the appropriate scope of harmless error review, arguing that the Magistrate should have reviewed the record *de novo* rather than deferring to the state appellate court's factual findings. Second, the Petitioner claims that Stewart's testimony was materially prejudicial and argues that the remaining evidence is so weak that the jury would not have

found the Petitioner guilty had the trial court excluded Stewart's statement.

Turning first to the scope of review, the Sixth Circuit has held that where the state court has not addressed or resolved claims based on federal law, the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims *de novo*. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir.2003); *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003). In this case, the appellate court did address the admissibility of Robin's statement, but it did not address the issue of harmless error. Therefore, in evaluating whether or not the admission of Stewart's testimony amounted to harmless error, this Court engages in an independent harmless error inquiry, not a review of a state court's harmless error inquiry. *See McKenzie*, 326 F.3d at 727 (applying *de novo* review to a sufficiency of the evidence claim where the state appellate court addressed only the admissibility but not the sufficiency of the evidence); *Cf. Coe v. Bell*, 161 F.3d 320, 334 (6th Cir. 1998) (holding that where the state court did not address the issue of harmless error, a federal court may conduct an independent harmless error analysis on habeas review).

Having reviewed the record under this expanded scope, the Court finds that the admission of Stewart's statement amounted to harmless error. When conducting a harmless error analysis on collateral review, courts apply the *Kotteakos* test, also referred to as the "substantial injurious effect or influence" standard, as opposed to the "reasonable doubt standard" that appellate courts apply on direct review. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946); *O'Neal v. McAnich*, 513 U.S. 432 (1995); *Coy v. California*, 519 U.S. 2, 5 (1996); *United States v. Dominguez Benitez*, 542 U.S. 74, 81 at n.7 (2004). This standard applies even where the district court is the first court reviewing for harmless error. *Gilliam v. Mitchel*, 179 F.3d 990, 995 (6th Cir. 1999). Under this standard, the court should grant the petitioner's request

for habeas relief only where the court has grave doubt regarding the harmlessness of the error. *O'Neal*, 513 U.S. at 432; *California v. Roy*, 519 U.S. 2, 5 (1996). "Grave doubt"occurs in those instances where "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 432.

In the instant case, a jury convicted the Petitioner of complicity to commit aggravated battery. The Ohio Revised Code defines complicity as follows:

> No person, acting with the kind of culpability required for the commission of offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
> (2) Aid or abet another in committing the offense;
> (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
> (4) Cause an innocent or irresponsible person to commit the offense.

Ohio Rev. Code §2923.03(A). The Ohio Supreme Court has held that

> to support a conviction for complicity by aiding and abetting . . . the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240, 245-46, 754 N.E.2d 796, 801 (2001). Furthermore, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in it of itself, that the accused was an aider and abettor." *Id.* at 243, 754 N.E.2d at 799 (quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982)).

The Petitioner argues that Henderson and Franklin's testimony was so thoroughly impeached that the jury would not have convicted Hawkins without hearing Stewart's statement. For example, Franklin testified on direct that the evening prior to the burglary she and the Petitioner argued over the telephone. ECF Dkt. # 15 at 50-52. According to Franklin, during this argument, the Petitioner

became angry with Franklin and threatened her, stating that he had friends who would come help him in a heartbeat and that he had two guns that he would "put to work" if he needed to. *Id.* at 51. However, on cross examination, Franklin admitted that in her statement to the police, she did not say that Hawkins said he would put the guns "to work." ECF Dkt. #15 at 114-17. However, she did report to the police that Franklin became angry with her and told her he had two guns. *Id.*

Similarly, the Petitioner argues that Henderson's testimony about crashing though the window of his house and observing Clark and Stewart flee toward Jackson's van, where Hawkins was waiting, conflicted with other testimony. *See* ECF Dkt. # 16 at 221. For instance, the Petitioner points out that several neighbors testified that although they saw two individuals running from Franklin's house, they did not see a blue van. *Id.* at 305, 315-17, 331-32; ECF Dkt. # 17 at 398-99. One of these neighbors, Mr. Ruckotzke stated that he did not recall seeing any cars, but he did not affirmatively state that there were no cars parked on the street. ECF Dkt. # 17 at 398-99. Though these neighbors did not recall seeing the blue van, the Court does not find their testimony to cast grave doubt on the credibility of Henderson's testimony.

When the police arrived to the scene, Henderson exclaimed that he knew who committed the act and directed two of the officers to the home of the Petitioner and Jackson. ECF Dkt. # 16 at 327; ECF Dkt. # 17 at 445, 503-04. This combined with the officer's testimony that they discovered Clark and Stewart hiding in Jackson's van with Hawkins sitting in the Driver's seat provides circumstantial evidence that Hawkins was attempting to aid Clark and Stewart in committing the burglary and escaping the scene of the crime.

Additionally, one neighbor, Ted Young, testified to seeing three individuals walking down the street, pointing in different directions, just shortly before the time of the burglary. ECF Dkt. #

16 at 306. Judging by their size, the neighbor believed there to be two males and one female. *Id.* at 305-06. Another neighbor, Jaclyn Davey, testified that she also saw three individuals out the morning of the burglary. *Id.* at 138-40. Two individuals were on her side of the street and the third individual was across the street, but later joined the others as they walked "down Artemis" and stopped in front of the "middle house" in the diagram used at trial which was identified as Franklin and Henderson's house by another neighbor, David Barnwell. *Id.* at140, 323.

After the burglary, Patrolman James Ennemoser and Officer Martin Gilliland of the Kent Police Department arrived at Henderson and Franklin's home and an officer already at the scene sent them to the Petitioner and Jackson's home to investigate. ECF Dkt. # 17 at 444-45. When the officers arrived at Hawkins and Jackson's home, a blue van was in the driveway and the Petitioner was in the driver's seat. *Id*. at 446, 504-05. The Petitioner gave three separate explanations as to why he was in the van leaving the house that morning: to go to work, to get a pack of cigarettes, and to take the children to school. *Id.* at 457, 506. With consent, the officers searched the home. *Id.* at 451. The Petitioner and Jackson were cooperative with the officers until the officers asked to look in the van. *Id.* at 456, 507-08. After ascertaining that there was probable cause, the officers entered the van and discovered that both Clark and Stewart were in the van. *Id*. at 461-63, 512-14.

Taking this evidence as a whole, the Court finds a sufficient basis for the jury to conclude, absent Stewart's statement, that Hawkins assisted Clark and Stewart with the burglary. In particular, the Petitioner's presence in the van, his inconsistent responses as to why he was leaving in the van, the change in his attitude when the officers asked to search the van, and the fact that the officers ultimately found Clark and Stewart at the very location and in the precise vehicle that Henderson had described to the officers provided evidence enough for the jury to infer that the Petitioner's role

in the aggravated robbery was more than that of a mere bystander. Stewart's statement supplemented the other evidence at trial but did not tip the balance of evidence against the Petitioner.[3/] The Confrontation Clause error, therefore, did not cause a substantial nor an injurious effect or influence on the verdict and is thus harmless error.

*B. Second Ground for Relief – the Cross-Examination of Lt. Stein*

In his second ground for relief, the Petitioner contends that the trial court violated his Fifth Amendment right to confront witnesses against him by improperly restricting cross-examination. According to Supreme Court precedent, the trial courts have wide latitude to reasonably limit cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1984); *Delaware v. Fensterer* 474 U.S. 15 (1985). "A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited in engaging in otherwise appropriate cross-examination designed to show a prototypical form of a bias on the form of the witness, and thereby to 'expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680, *citing Davis v. Alaska*, 415 U.S. 308, 318 (1974).

In the instant case, the Petitioner argues that the trial court's limitations on the cross-examination of Lt. Stein, the officer who interviewed Stewart, violated the Confrontation Clause. During cross-examination of Lt. Stein, counsel for the Petitioner attempted to impeach the method and manner in which Stein took the statement. Specifically, the Petitioner attempted to demonstrate

[3/] The Petitioner argues that this Court should follow the decision of the Ohio Court of Appeals in *State v. Clark*, 2004-Ohio-334, 2004 WL 144238 (Ohio App. 11th Dist. Jan 16, 2004). In that case, the appellate court, applying the reasonable doubt standard, determined that the admission of Stewart's statement against Clark was not harmless error as to Clark's conviction for kidnaping. *Id.* at *6. However, the court primarily based that holding on the fact that a previous trial of Clark resulted in a hung jury on the kidnaping charge. Accordingly, the court could not find beyond a reasonable doubt that the evidence against Clark was so strong that the jury in the second trial would have convicted Clark even without Stewart's statement. *Id.* As such, that case does not significantly illuminate the current analysis.

to the jury that the officer led Stewart through her statement and that, ultimately, "Stewart's only role was to verbally sign it." ECF Dkt. # 10 at ¶7. The trial court, however, concluded that cross-examination regarding each of Stein's questions to Stewart was not necessary because "whatever is on the tape is on the tape." ECF Dkt. # 18 at 717. Furthermore, as the state court of appeals determined, even after objections were sustained, the trial court still permitted extensive cross-examination of Stein. As the state court pointed out, the Petitioner did not need the cross-examination in order to show the jury the unreliability of the tape recorded statement. *State v. Hawkins*, 2002 WL 31895118, ¶ 40. The jury would have been able to tell where there were leading questions and the limitations on cross-examination did not affect their ability to "draw inferences relating to the reliability of the witness." Therefore, the trial court's limitation of cross-examination as to Stein was not in violation of the Petitioner's constitutional rights and the Petitioner has not shown that the limitation of cross-examination was contrary to or an unreasonable application of Supreme Court precedent.

Furthermore, even if this court were to find a violation, limitation of cross-examination are subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 680-81; *Arizona v. Fulminante*, 499 U.S. 279, 307 (1991). Factors to consider to determine whether the error was harmless are whether testimony was cumulative, whether there was evidence corroborating or contradicting the testimony, and the extent of cross-examination permitted. *Van Arsdall*, 475 U.S. at 684. Additionally, the court must consider "the overall strength of the prosecution's case." *Id*. This court found the admission of Stewart's statement to be harmless error. For the same reasons, this Court finds that the limitation of cross-examination would also amount to harmless error.

## IV. CONCLUSION

For the reasons stated above the Court adopts in part the report and recommendation of Magistrate Judge Gallas and **DENIES** Hawkins' petition for habeas relief pursuant to 28 U.S.C. § 2254.

IT IS SO ORDERED.

Dated: August 24, 2006

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE